# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| SHAUN ROSARIO,<br>          Plaintiff,<br><br>vs.<br><br>WASHINGTON MEMORIAL HOSPITAL,<br>Official capacity; MONONGAHELA<br>VALLEY HOSPITAL, official capacity;<br>HENRY HOLETS, JR., MD; official<br>Capacity; OSCAR URREA, MD.; official<br>Capacity; NURSE CAROL MAY,<br>Individual capacity; NURSE STACY<br>HOFFMAN, individual capacity;<br>UNKNOWN MEDICAL DIRECTOR OF<br>THE MONONGAHELA VALLEY<br>HOSPITAL, individual capacity;<br>SECURITY OFFICER ROBERT<br>ASHBAUGH, individual capacity;<br>SECURITY OFFICER WILLIAM<br>SWICK, individual capacity,<br>          Defendants. | Civil Action No. 12-1799<br><br>Judge Joy Flowers Conti/<br>Magistrate Judge Maureen P. Kelly |

## **REPORT AND RECOMMENDATION**

### I. RECOMMENDATION

It is respectfully recommended that, prior to service, all of the federal claims contained in the Complaint be dismissed for failure to state a claim upon which relief can be granted, pursuant to the authority granted by the Prison Litigation Reform Act. Given that all of the federal claims should be dismissed, the Court should decline to exercise supplemental jurisdiction over the remaining state law claims.

### II. REPORT

Shaun Rosario ("Plaintiff"), apparently a pre-trial detainee at the time of the initiation of this case, is currently housed at the Washington County Correctional Facility. Plaintiff has filed

a Complaint against nine Defendants named in the caption. Two of the Defendants are hospitals, namely, Washington Memorial Hospital ("Washington Hospital") and Monongahela Valley Hospital ("Mon Valley Hospital"). The remaining Defendants are physicians, nurses or security officers at the two hospitals. Plaintiff alleges that the Defendants Mon Valley Hospital, Dr. Henry Holets Jr., Dr. Oscar Urrea, Nurse Carol May, Nurse Stacy Hoffman, Security Officer Robert Ashbaugh, Security Officer William Swick and the Medical Director at Mon Valley Hospital (collectively the "Mon Valley Hospital Defendants") violated unspecified constitutional rights of Plaintiff when they failed to adequately and appropriately treat him after Plaintiff attempted to commit suicide on May 9, 2011, by overdosing on street drugs and after he was brought to the hospital by emergency medical personnel. Plaintiff seeks to sue all of the Defendants under 42 U.S.C. § 1983 for violations of his constitutional rights. In addition, Plaintiff alleges that the Defendants' lack of proper treatment of him while he was in the two hospitals violated his rights under the Americans with Disabilities Act ("ADA") and under the Rehabilitation Act. In addition, Plaintiff invokes this Court's supplemental jurisdiction to bring a number of state law claims.

Because the Complaint fails to show that the Defendants act under color of state law, the Section 1983 claims should be dismissed for failure to state a claim upon which relief can be granted. Because the failure to treat or to adequately treat an individual with a disability fails to state a claim under the ADA and under the Rehabilitation Act, those claims should be dismissed as well. Because all of the federal claims should be dismissed, the Court should decline to exercise its supplemental jurisdiction over the state law claims.

## A. RELEVANT FACTUAL AND PROCEDURAL HISTORY

According to the Complaint, on May 9, 2011, Plaintiff attempted to commit suicide by overdosing on street drugs. Someone called the police to report a man lying face down on the ground in an alley in Donora, Pennsylvania. After the police arrived, they found Plaintiff lying on the ground unconscious. Plaintiff asserts that the officers initiated a criminal investigation because they took pictures and observed what they believed to be fresh needle marks on Plaintiff's forearms. The police called paramedics who transported Plaintiff to the Mon Valley Hospital where Plaintiff was intubated and admitted to the Critical Care Unit. A psychiatric evaluation was ordered as well. A toxicology screening identified a substantial number of street drugs and narcotics that Plaintiff had ingested.

At some point after Plaintiff was extubated, he became agitated and combative. At approximately 1:15 a.m. on May 10, 2011, Defendant Nurse May was in Plaintiff's room, attempting to calm him down. Defendant Nurse Hoffman soon joined Nurse May. Plaintiff became more agitated, grabbed at electrodes and ripped his IV tube out of his body and then intentionally splashed the two nurses with his blood. ECF No. 1-1 at 13, ¶ 56.

Plaintiff then prevented the two nurses from leaving his room. The two security officer Defendants were called to come to the room and when they arrived, Plaintiff pushed past the two nurses and tried to hold the door to the room closed so as to prevent the entry of the two security guards. In addition, when the security guards tried to gain access to the room, Plaintiff grabbed a syringe, and yelled that "I have a needle" and gestured that he would use it offensively. The two security guards gained access to the room and upon doing so, Plaintiff pulled Nurse May between himself and the security guards. The security guards were able to pull Nurse May from

out of Plaintiff's grasp, and then the two nurses left the room. The security guards subdued Plaintiff.

Following the incident, Mon Valley Hospital personnel called the police. A police officer came to the hospital and announced to Plaintiff that the officer had a warrant to arrest Plaintiff for a probation violation based on the events of the day. ECF No. 1-1 at 16, ¶ 70. A constable arrived at the hospital to transport Plaintiff to the Washington County Correctional Facility. Plaintiff alleges that despite needing mental health treatment and further health care treatment, personnel at the Mon Valley Hospital, discharged Plaintiff into the constable's custody.

After being placed in restraints, Plaintiff was placed in the constable's vehicle. While being driven to the Washington County Correctional Facility, Plaintiff was able to slip out of his restraints. Plaintiff attacked the constable while the constable was driving, causing him to lose control of the van, run off the road into an embankment and crash. The constable kicked out a window and went to the road for assistance. A motorist stopped to offer assistance. The constable and the motorist then pulled Plaintiff from the constable's vehicle. During the extraction, Plaintiff pulled out a knife and stabbed the constable.

After the Plaintiff was subdued, he was transported to Washington Hospital where he was examined and in order to receive any medical treatment necessitated by the vehicle crash.

As to the Mon Valley Defendants, Plaintiff alleges that they failed to properly treat him, failed to have him involuntarily committed and wrongfully discharged him from the hospital, all of which lead to Plaintiff performing the actions of accosting the constable which lead to criminal charges against Plaintiff. ECF No. 1-1 at 20 at ¶ 89 ("Defendant Monongahela Hospital ignored their overall responsibility, with regards to caring for the plaintiff by failing to

4

thoroughly diagnose the plaintiff's mental and physical condition, not providing psychiatric treatment, not taking appropriate safe guards to insure plaintiff's well-being, as well as others who might be affected due to the plaintiff's unstable conditions [sic]. The level of incompetence and neglect rose to a manner that not only put the plaintiff and others in harm[']s way, but also lead to a train of events that left the plaintiff with criminal charges.").

As to Washington Hospital, Plaintiff alleges that "Washington Memorial Hospital . . . is the acting entity of its officers, doctors, nurses, agents, servants, and employees, and at all times mentioned in this complaint was legally responsible for the actions and inactions of their officers, doctors, nurses, agents, servants, and employees which amounted to grossly negligent and a deliberate indifference of the plaintiff's rights." ECF No. 1-1 at 3.

On December 10, 2012, the Clerk's Office docketed Plaintiff's Motion for Leave to Proceed In Forma Pauperis (the "IFP Motion"). ECF No. 1. However, the IFP Motion was deficient, and so the Court ordered Plaintiff to file an amended IFP Motion. ECF No. 2. Plaintiff filed the Amended IFP Motion, ECF No. 3, which was granted. ECF No. 4. The Complaint was filed and attached thereto were numerous exhibits. ECF No. 5.

### B. APPLICABLE LEGAL PRINCIPLES

In the Prison Litigation Reform Act ("PLRA"), Pub. L. No. 104-134, 110 Stat. 1321 (1996), Congress adopted major changes affecting civil rights actions brought by prisoners in an effort to curb the increasing number of frivolous and harassing law suits brought by persons in custody. The PLRA permits courts to screen complaints filed by prisoners and dismiss them before they are served if the complaints fail to state a claim or are frivolous or malicious. See Santana v. United States, 98 F.3d 752, 755 (3d Cir. 1996). Because Plaintiff is a prisoner who has been granted IFP status, the screening provisions of the PLRA apply. 28 U.S.C. §1915(e)

("[n]otwithstanding any filing fee, or any portion thereof, that may have been paid [by a prisoner granted IFP status], the court shall dismiss the case at any time if the court determines that – (A) the allegation of poverty is untrue; or (B) the action or appeal – (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief.").

In performing the Court's mandated function of sua sponte review of complaints under 28 U.S.C. § 1915(e) to determine if they fail to state a claim upon which relief can be granted, a federal district court applies the same standard applied to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6). See, e.g., Powell v. Hoover, 956 F. Supp. 564, 568 (M.D. Pa. 1997)(applying Rule 12(b)(6) standard to claim dismissed under 28 U.S.C. § 1915(e)(2)(B)(ii)).

In reviewing complaints as mandated by 28 U.S.C. § 1915(e) and in applying the standards applicable to a Rule 12(b)(6) motion to dismiss, the complaint must be read in the light most favorable to the plaintiff and all well-pleaded, material allegations of fact in the complaint must be taken as true. See Estelle v. Gamble, 429 U.S. 97 (1976). However, as the United States Supreme Court held in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), a complaint may properly be dismissed pursuant to Fed. R. Civ. P. 12 (b)(6) if it does not allege "enough facts to state a claim to relief that is plausible on its face." Id. at 570 (rejecting the traditional 12 (b)(6) standard set forth in Conley v. Gibson, 355 U.S. 41, 45-46 (1957)). See also Ashcroft v. Iqbal, 556 U.S. 662 (2009). Furthermore, under the 12(b)(6) standard, a "court need not . . . accept as true allegations that contradict matters properly subject to judicial notice or by exhibit." Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001), *amended by,* 275 F.3d 1187 (9th Cir. 2001). Nor must a court accept inferences drawn by the plaintiff if they are unsupported by the facts as set forth in the complaint. See California Pub. Employee Ret. Sys. v.

6

The Chubb Corp., 394 F.3d 126, 143 (3d Cir. 2004) (citing Morse v. Lower Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997)). A court also need not accept legal conclusions set forth as factual allegations. Twombly, 550 U.S. at 555 (citing Papasan v. Allain, 478 U.S. 265, 286 (1986)). Lastly, because Plaintiff is pro se, courts accord an even more liberal reading of the complaint, employing less stringent standards when considering pro se pleadings than when judging the work product of an attorney. Haines v. Kerner, 404 U.S. 519 (1972).

**C. DISCUSSION**

The Complaint filed by Plaintiff consists of twelve counts. In Counts 1, 2 and 3, Plaintiff asserts causes of action under Section 1983. ECF No. 1-1 at 21 to 27. In Counts 4 and 5, Plaintiff alleges violations of the ADA and the Rehabilitation Act. In Counts 6 through 12, he asserts state law claims. There are numerous deficiencies in the Complaint.

**1. Counts 1, 2 and 3 Fail to State a Claim Under Section 1983.**

Section 1983 provides a cause of action for violations of a plaintiff's rights under the United States Constitution or statutes. See Arpin v. Santa Clara Valley Transp. Agency, 261 F.3d 912, 925 (9th Cir. 2001) ("a litigant complaining of a violation of a constitutional right does not have a direct cause of action under the United States Constitution but must utilize 42 U.S.C. § 1983."). Although not explicit as to which rights Plaintiff claims were violated, it appears that Plaintiff is invoking his rights under the Eighth or Fourteenth Amendment to be free from deliberate indifference. Johnson v. Norris, 3 F.App'x 579, 579 (8th Cir. 2001) ("Eighth Amendment violated where prison officials are deliberately indifferent to prisoner's health or safety"). See also Complaint, ECF No. 1-1 at 21, ¶ 91 (alleging defendant acted "indifferent to numerous reckless, grossly negligent, and malicious acts suffered by Plaintiff").

In the Complaint at issue, the most significant problem with Plaintiff's Section 1983 claims is that Plaintiff fails to allege that the Defendants acted under color of state law, as is required in order to state a Section 1983 claim. Specifically, Plaintiff fails to state a claim under Section 1983 because he fails to allege facts, showing that the Defendants acted under color of state law. In order to establish a Section 1983 cause of action, a plaintiff must sufficiently allege: 1) that there was a person acting under color of state law; 2) whose actions under color of state law caused him to be deprived of rights, privileges, or immunities secured by the Constitution or laws of the United States. West v. Atkins, 487 U.S. 42 (1988). Because Plaintiff fails to allege any facts showing that the Defendants acted under color of State law, the Section 1983 claims should be dismissed for this reason. See, e.g., McCain v. Episcopal Hosp., 350 F.App'x 602, 604-05 (3d Cir. 2009) ("McCain makes no allegations to support his claim that the hospitals were acting under color of state law. '[T]here is no liability under § 1983 for those not acting under color of law.' Although McCain asserts that the hospitals were acting under color of state law, there is no allegation that the Episcopal Hospital or the Hospital of the University of Pennsylvania are state actors, that they have 'acted together with' or have 'obtained significant aid from state officials,' or that their conduct is 'otherwise chargeable to the State.' Other than McCain's bare assertion, there is nothing in the complaint to suggest that either defendant was acting under color of state law.") (citations omitted).

What the United States Court of Appeals for the Third Circuit stated in McCain is equally applicable here. While Plaintiff alleges in a conclusory fashion that "[e]ach individual defendant described within this complaint acted under the color of state law", ECF No. 1-1 at 5, ¶ 16, Plaintiff fails to allege any facts showing that any of the Defendants acted under color of state law. The Complaint is simply insufficient under Twombly and Iqbal. As the United States

8

Supreme Court explained in Twombly: "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]" Bell Atlantic Corp. v. Twombly, 550 U.S. at 555. Rather, Plaintiff must allege a modicum of facts showing that the Defendants acted under color of state law. This, Plaintiff has failed to do, and indeed, does not appear to be able to remedy.[1] Hence, all of Plaintiff's Section 1983 claims must be dismissed for failure to state a claim upon which relief can be granted. The Complaint fails to show that the Defendants acted under color of state law and so, fails to state a claim under Section 1983.

In the alternative, even if we were to find that the Defendants acted under color of state law, we find that Plaintiff's allegations against all of the Defendants fail to state a claim under Section 1983 because, at most, Plaintiff alleges negligence or even gross negligence in the forms of, *inter alia*, medical malpractice, which is simply insufficient under the Constitution to state a claim for relief. See, e.g., ECF No. 1-1 at 11, ¶ 43 (The Defendants' "failure to conduct an appropriate suicide or psychiatric assessment is by itself extremely negligent. . ."); id., at 17, ¶ 73 ("By Defendants['] gross deviation from the required standard of care in treating a patient, defendant Hospital failed to meet its duty to refrain from gross negligence in regarding treatment, discharge or commitment of a patient."); id., at 20, ¶ 87 ("multiple breaches, breakdowns in the system, deviations, and departures from the standard of care committed by defendant Monongahela Hospital personnel resulted in willful malpractice.").

The Complaint reads like a medical malpractice action. Even taking the Complaint and its attached exhibits in the light most favorable to the Plaintiff, the most that the record reflects is

---

[1] Plaintiff may use the opportunity to file objections in order to attempt to allege any additional facts showing that the Defendants acted under color of state law.

negligence or even gross negligence, a level of liability which falls below the constitutional threshold. Daniels v. Williams, 474 U.S. 327, 333 (1986) ("injuries inflicted by governmental negligence are not addressed by the United States Constitution"); Woodward v. City of Worland, 977 F.2d 1392, 1399 n.11 (10th Cir. 1992)("Neither simple nor gross negligence implies an intentional and deliberate violation of constitutional rights, and consequently neither form of negligence satisfies the scienter requirement of § 1983."); Kwasnik v. LeBlon, 228 F. App'x 238, 244 (3d Cir. 2007) ("Liberally construing the Amended Complaint, as we must, we conclude that the allegations, and reasonable inferences drawn therefrom, at best, merely state a negligence claim. Negligence claims are not cognizable under § 1983.").

Accordingly, either because the Defendants do not act under color of state law or because the Complaint alleges, at most, negligence, the Section 1983 claims should be dismissed.

### 2. Counts 4 and 5 Fail to State a Claim Under the ADA and Rehabilitation Act.

Plaintiff also makes a claim under the ADA. Specifically, he asserts that the two Defendant Hospitals and unknown supervisors "violated the plaintiff's statutory right to be free from discrimination on the basis of disability under Title II of the Americans with Disabilities Act ("ADA["]), when defendants did not provide adequate treatment or take proper steps to have the plaintiff committed for mental health evaluation, but instead irresponsibly discharged the plaintiff after becoming aware of the plaintiff's mental deficiencies; which included being suicidal and hostile." ECF No. 1-1 at 28, ¶¶ 103 to 104.

Plaintiff makes a nearly identical claim under the Rehabilitation Act. Plaintiff alleges that the two Defendant Hospitals and unknown supervisors there, "violated the plaintiff's statutory rights to be free from discrimination on the basis of disability, under 504 of the Rehabilitation Act, when defendant did not provide adequate treatment and take proper steps to

have the plaintiff committed for mental health evaluation, and instead irresponsibly discharged the Plaintiff." ECF No. 1-1 at 29, ¶¶106 to 107.

Plaintiff's claims amount to an alleged failure to treat or adequately treat and alleged medical malpractice in the Defendants' alleged failure to provide adequate mental health treatment for Plaintiff, including the failure to involuntarily commit Plaintiff psychiatrically. However, such claims as failure to treat or failure to adequately treat and allegations of medical malpractice, all fail to state a claim under either the ADA or the Rehabilitation Act. As the United States Court of Appeals for the Seventh Circuit, speaking through the eminent Judge Posner, explained:

> the Act [*i.e.*, the ADA] would not be violated by a prison's simply failing to attend to the medical needs of its disabled prisoners. No discrimination is alleged; Bryant was not treated worse because he was disabled. His complaint is that he was not given special accommodation. Unlike the prisoner plaintiffs in Love v. McBride, 896 F.Supp. 808 (N.D.Ind.1995), or Donnell v. Illinois State Bd. of Education, 829 F.Supp. 1016, 1020 (N.D.Ill.1993), he is not complaining of being excluded from some prison service, program, or activity, for example an exercise program that his paraplegia would prevent him from taking part in without some modification of the program. He is complaining about incompetent treatment of his paraplegia. The ADA does not create a remedy for medical malpractice. Standards of medical care are not irrelevant to the statute. Disabled people often cannot participate in programs and activities unless special attention is given to their medical needs. . . . Even apart from the prison setting it would be extremely odd to suppose that disabled persons whose disability is treated negligently have a federal malpractice claim by virtue of the Americans With Disabilities Act, whereas a sick or injured but not disabled person-a person suffering from an acute viral infection, perhaps, or who has broken his leg, or who has a hernia or an inflamed gall bladder-must be content with the remedy that the state law of medical malpractice provides. Moreover, the courts have labored mightily to prevent the transformation of the Eighth Amendment's cruel and unusual punishments clause into a medical malpractice statute for prisoners. We would be exceedingly surprised to discover that Congress had made an end run around these decisions in the Americans With Disabilities Act.

Bryant v. Madigan, 84 F.3d 246, 248 (7th Cir. 1996).

Similarly, in the Complaint at issue, the failure to adequately treat Plaintiff's mental health issues and/or failure to civilly commit Plaintiff for mental health treatment does not constitute a violation of Title II of the ADA as a matter of law, insofar as Plaintiff is simply alleging nothing more than medical malpractice. The rule that medical malpractice does not violate the ADA, which was announced in Bryant has been applied by the United States Court of Appeals for the Third Circuit. Iseley v. Beard, 200 F.App'x 137, 142 (3d Cir. 2006) ("Iseley's argument that the denial of treatment for his ailments violated the ADA fails as well. The ADA prohibits the exclusion of otherwise qualified participants from any program or benefits on account of their disability. 42 U.S.C. § 12132. A claim under the ADA requires that: 1) the plaintiff has a disability; 2) the plaintiff is otherwise qualified for the program sought or would be qualified if the defendant made reasonable modifications to the program, and 3) the plaintiff was excluded from the program solely by reason of his or her disability. *See Wagner v. Fair Acres Geriatric Center*, 49 F.3d 1002, 1009 (3d Cir. 1995). Iseley does not claim that he was excluded from any program on the basis of his disability. Rather he claims that he was denied medical treatment for his disabilities, which is not encompassed by the ADA's prohibitions.") (citing Bryant approvingly). Accordingly, Plaintiff's ADA claims must be dismissed for failing to state a claim upon which relief can be granted.

This same reasoning applies equally to Plaintiff's claims made in the Complaint under the Rehabilitation Act. Fitzgerald v. Corrections Corp. of America, 403 F.3d 1134, 1144 (10th Cir. 2005). The United States Court of Appeals for the Tenth Circuit held as follows in Fitzgerald:

> Several circuits have expressly concluded that neither the ADA nor the Rehabilitation Act provide remedies for alleged medical negligence. *See Bryant v. Madigan*, 84 F.3d 246, 249 (7th Cir. 1996) ("ADA does not create remedy for medical malpractice"); *Grzan v. Charter Hospital of Northwest Indiana*, 104 F.3d

> 116, 121, 123 (7th Cir. 1997) (affirming district court's dismissal under Fed.R.Civ.P. 12(b)(6) of plaintiff's section 504 [of the Rehabilitation Act] claim because "section 504 [which 'is materially identical to the ADA'] does not provide a federal malpractice tort remedy" and allegations of discriminatory medical treatment do not fit into the four-element framework required by Section 504.).
>
> In the instant case, the principal basis for Fitzgerald's claim against Dr. Josephson is the doctor's recommendation that the prison may "do nothing" as an acceptable course of treatment for Fitzgerald's injuries. Dr. Josephson suggested the non-treatment option as one option, but also recommended surgery as another option. . . . These are the sort of purely medical decisions that we have held do not ordinarily fall within the scope of the ADA or the Rehabilitation Act. Fitzgerald's claims against Dr. Josephson under the ADA and Rehabilitation Acts were therefore properly rejected on the merits under § 1997e(c)(2).

Id. at 1144. Accordingly, Plaintiff's Rehabilitation Act claims must be dismissed as well.

Hence, all ADA claims and claims under the Rehabilitation Act should be dismissed against the Defendants for failure to state a claim upon which relief can be granted.

### 3. The Court Should Decline Supplemental Jurisdiction as to Counts 6 through 12.

Given that we recommend dismissal of all of the federal law claims for failure to state a claim upon which relief can be granted, we also recommend that the Court decline to exercise supplemental jurisdiction over the state law claims. See, e.g., Bonenberger v. Plymouth Township, 132 F.3d 20, 23 n.1 (3d Cir. 1997) ("where federal claims are dismissed before trial, the district court 'must decline to decide the pendent state claims unless considerations of judicial economy, convenience, and fairness to the parties provide an affirmative justification for doing so.'") (quoting Borough of West Mifflin v. Lancaster, 45 F.3d 780, 788 (3d Cir.1995)). See also 28 U.S.C. § 1367(c)(3) which permits a district court to "decline to exercise supplemental jurisdiction over a [state law] claim ... if [it] has dismissed all claims over which it has original jurisdiction...."). Here, the considerations do not provide an affirmative justification for retaining jurisdiction over the state law claims.

### III. CONCLUSION

In accordance with the Magistrate Judges Act, 28 U.S.C. § 636(b)(1), and Local Rule 72.D.2, the parties are permitted to file written objections in accordance with the schedule established in the docket entry reflecting the filing of this Report and Recommendation. Objections are to be submitted to the Clerk of Court, United States District Court, 700 Grant Street, Room 3110, Pittsburgh, PA 15219. Failure to timely file objections will waive the right to appeal. Brightwell v. Lehman, 637 F.3d 187, 193 n. 7 (3d Cir. 2011). Any party opposing objections may file their response to the objections within fourteen (14) days thereafter in accordance with Local Civil Rule 72.D.2.

                Respectfully submitted,

                s/ Maureen P. Kelly
                MAUREEN P. KELLY
                UNITED STATES MAGISTRATE JUDGE

Dated: March 6, 2013

cc:    The Honorable Joy Flowers Conti
       United States District Judge

       Shaun Rosario
       Washington County Correctional Facility
       100 West Cherry Avenue
       Washington, PA 15301