IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| SHAUN ROSARIO, <br>     Plaintiff, <br><br> vs. <br><br> WASHINGTON MEMORIAL HOSPITAL, Official capacity; MONONGAHELA VALLEY HOSPITAL, official capacity; HENRY HOLETS, JR., MD; official Capacity; OSCAR URREA, MD.; official Capacity; NURSE CAROL MAY, Individual capacity; NURSE STACY HOFFMAN, individual capacity; UNKNOWN MEDICAL DIRECTOR OF THE MONONGAHELA VALLEY HOSPITAL, individual capacity; SECURITY OFFICER ROBERT ASHBAUGH, individual capacity; SECURITY OFFICER WILLIAM SWICK, individual capacity, <br>    Defendants. | Civil Action No. 12-1799 <br><br> Judge Joy Flowers Conti/ <br> Magistrate Judge Maureen P. Kelly |

## MEMORANDUM OPINION AND ORDER

The above-captioned prisoner civil rights complaint (the "Complaint") filed by plaintiff Shaun Rosario ("Plaintiff") was received by the Clerk of Court on December 10, 2012, and was referred to a United States Magistrate Judge for pretrial proceedings in accordance with the Magistrate Judges Act, 28 U.S.C. § 636(b)(1), and Rule 72 of the Local Rules Of Court, regarding Magistrate Judges.

The magistrate judge in the Report and Recommendation (the "Report"), ECF No. 10, filed on March 6, 2013, recommended that Plaintiff's federal claims in the Complaint be dismissed for failure to state a claim pursuant to the screening provisions of the Prison Litigation Reform Act ("PLRA"), 28 U.S.C. § 1915(e)(2)(B)(ii); 28 U.S.C. § 1915A; 42 U.S.C. § 1997e(e).

Service was made on Plaintiff at his address of record. On March 20, 2013, Plaintiff filed his objections. ECF No. 11.

When objections are filed to a report and recommendation of a magistrate judge, the district court makes a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objections are made. 28 U.S.C. § 636(b)(1); United States v. Raddatz, 447 U.S. 667, 674–75 (1980). The court may accept, reject, or modify, in whole or in part, the magistrate judge's findings or recommendations. Id. Although the standard of review is *de novo*, 28 U.S.C. § 636(b)(1) permits whatever reliance the district court, in the exercise of sound discretion, chooses to place on a magistrate judge's proposed findings and recommendations. Raddatz, 447 U.S. at 674–75; see Mathews v. Weber, 423 U.S. 261, 275 (1976); Goney v. Clark, 749 F.2d 5, 7 (3d Cir. 1984).

At the outset, Plaintiff's assertion in his objections -- that the correct standard for determining whether a complaint fails to state a claim is the standard that a court may not "dismiss a complaint for failure to state a claim unless it appears beyond doubt that plaintiff can prove no set of facts in support of his claims which would entitle him to relief" -- must be rejected. ECF No. 11 at 2. That standard is clearly incorrect. See Broyles v. Texas, 381 F. App'x 370, 373 (5th Cir. 2010) ("*Twombly* abrogated the 'no set of facts' standard first articulated in *Conley v. Gibson*"); Fritz v. Charter Tp. of Comstock, 592 F.3d 718, 725 (6th Cir. 2010) ("*see Twombly*, 550 U.S. at 561-63, 127 S.Ct. 1955 (abrogating the 'no set of facts' minimal standard often cited from *Conley* by requiring more than a mere possibility of such a 'set of facts')").

**I. THE DEFENDANTS DID NOT ACT UNDER COLOR OF LAW**

The magistrate judge in the Report noted that, while Plaintiff baldly alleged that the defendants acted under color of state law, he alleged no facts to support that conclusion. ECF No. 10 at 8, 9. In the Report Plaintiff was instructed that he could allege, in his objections, any additional facts that he may possess in order to show that the defendants acted under color of state law. ECF No. 10 at 9 n.1.

Plaintiff did not take the opportunity to allege such facts; rather, the main response of Plaintiff to the finding in the Report that there was no action under color of state law alleged in the Complaint was:

> The Plaintiff was under the impression that by being detained by hospital personnel for the specific purpose of turning him over to law enforcement authorities, that he was subjected to an unlawful seizure and unlawful search under the Fourth Amendment. Therefore, plaintiff believed the defendants (Hospitals and its employees) would fall under the states actors' doctrine, which would allow the suit to precede [sic] under 42 U.S.C. 1983 when he wrote the complaint.

ECF No. 11 at 5.

The only allegation in the foregoing quote that comes close to an allegation of fact is that unspecified "hospital personnel" detained Plaintiff for the specific purpose of turning him over to law enforcement authorities. While Plaintiff did not specify to which of the two hospital defendants he was referring, this court will assume he meant to refer to both of the hospital defendants.

**A. Lack of Allegations Concerning The Mon Valley Hospital Defendants Acting Under Color of Law.**

There are several problems with Plaintiff's argument with respect to the Mon Valley Hospital Defendants as defined in the Report, ECF No. 10 at 2 (*i.e.*, Mon Valley Hospital, Dr.

3

Henry Holets Jr., Dr. Oscar Urrea,[1] Nurse Carol May, Nurse Stacy Hoffman, Security Officer Robert Ashbaugh, Security Officer William Swick and the Medical Director at Mon Valley Hospital). First, the only Mon Valley Hospital Defendants who plausibly could be said to have detained Plaintiff at any point in the Complaint's narrative are the two security guards, defendants Robert Ashbaugh and William Swick (collectively, the "two Security Guard Defendants"), who subdued Plaintiff after Plaintiff attacked Nurse Carol May and Nurse Hoffman (collectively, the "two Nurse Defendants") and after Plaintiff threatened the Nurse Defendants and the Security Guard Defendants. Hence, the Complaint must be dismissed as against all the Mon Valley Hospital Defendants other than the two Security Guard Defendants in light of the assertions in the Complaint that refer only to the two Security Guard Defendants having "detained" Plaintiff for the sole purpose of turning him over to the police.

Even as to the two Security Guard Defendants, Plaintiff's allegation that they detained him for the sole purpose of turning him over to police would not be sufficient to show plausibility that they acted under color of state law. At most, the two Security Guard Defendants made a "citizen's arrest" of Plaintiff for assaulting the two Nurse Defendants as well as the two Security Guard Defendants. A "citizen's arrest" is simply insufficient to transform their acts into actions taken under color of state law. See, e.g., Bass v. Parkwood Hosp., 180 F.3d 234, 243 (5th Cir. 1999) ("As in the case of a citizen's arrest or a warehouseman's sale, the statutory authorization of private acts does not transform such conduct into state action: 'The statutes authorizing or constraining these private activities may or may not be constitutional [citation];

---

[1] With regard to Dr. Urrea, it should be noted that there are no specific factual allegations against him contained in either the Complaint or in the objections concerning the events giving rise to the Complaint and that the medical records attached to the Complaint establish that although a referral of Plaintiff for a consultation with Dr. Urrea was ordered on May 9, 2011, it never occurred because "Patient [was] discharged prior to being seen." ECF No. 1-2 at 35.

4

the activities themselves remain private [citations].'"); Spencer v. Lee, 864 F.2d 1376, 1379 (7th Cir. 1989) (en banc) ("the analogy that Spencer seeks to draw to arrest is inapt, since a citizen's arrest is not subject to challenge under section 1983" because there is no action under color of state law); Carey v. Continental Airlines, Inc., 823 F.2d 1402, 1404 (10th Cir. 1987) ("If Gilbert himself made a 'citizen's arrest' of Carey, as Carey asserts, this does not make Gilbert a state actor. Gilbert's complaining about Carey's presence to a Tulsa police officer who, acting within the scope of his statutory duties, arrested Carey after questioning him, does not, without more, constitute state action for which Gilbert can be held responsible.") (internal citations omitted).

In the alternative, even if it could be said that the two Security Guard Defendants did act under color of state law, their detention of Plaintiff after he assaulted the two Nurse Defendants was fully supported by probable cause, see, e.g., ECF No. 1-2 at 11 to 12 (affidavit of probable cause), and so, Plaintiff's Fourth Amendment rights (which he invokes for the first time in his objections) were not violated as a matter of law given the facts alleged in the Complaint and the objections.

Having concluded there is no Fourth Amendment violation implicated in the Complaint, there can be no claim for a procedural due process violation of the Fourteenth Amendment (i.e., deprivation of liberty, which Plaintiff also mentions for the first time in his objections) based upon the same facts as the Fourth Amendment claim. "[T]he Fourth Amendment was tailored explicitly for the criminal justice system, and its balance between individual and public interests always has been thought to define the 'process that is due' for seizures of person or property in

5

criminal cases, including the detention of suspects pending trial."[2] Gerstein v. Pugh, 420 U.S. 103, 125 n.27 (1975).

> **B. Lack of Allegations Concerning The Washington Memorial Hospital Acting Under Color of Law.**

Plaintiff was brought to the Washington Memorial Hospital after he was arrested by the police at the Mon Valley Hospital and Plaintiff attacked the constable causing a roll-over accident. He was brought to the Washington Memorial Hospital for emergency treatment or evaluation after the roll-over accident. While Plaintiff was an arrestee at the time he was brought to the Washington Memorial Hospital, that fact does not transform the Washington Memorial Hospital or any of its agents into entities who acted under color of state law in treating Plaintiff

---

[2] To be clear, the court is not invoking the "explicit source" doctrine of Albright v. Oliver, 510 U.S. 266 (1994) (plurality), Graham v. Connor, 490 U.S. 386, 395 (1989), County of Sacramento v. Lewis, 523 U.S. 833 (1998), and their progeny, which only prohibit a substantive due process claim under the Fourteenth Amendment where an explicit standard from another amendment covers the factual situation. The court is simply applying the rule from Gerstein that where a plaintiff alleges a procedural due process claim, see ECF No. 11 at 5, invoking the Fourteenth Amendment and the claim alleges a denial of liberty without due process in connection with an arrest (*i.e.*, Plaintiff's seizure by the two Security Guard Defendants and their holding of Plaintiff until a police officer arrived), such a procedural due process claim cannot stand because the Fourth Amendment provides all the procedure that is due. Gerstein; Radvansky v. City of Olmsted Falls, 395 F.3d 291, 313 (6th Cir. 2005) ("the Due Process Clause of the Fourteenth Amendment does not require any additional procedures beyond those mandated by the Fourth Amendment"); Simons v. Marin County, 682 F.Supp. 1463, 1470 (N.D.Cal., 1987) ("If the fourth amendment, which specifically governs the standards of arrest has not been breached, neither will the plaintiff be able to state a claim under the more general fourteenth amendment standard. Plaintiffs cannot argue that due process entitled them to any process greater than that guaranteed by the fourth amendment. They can only argue violation of the fourth amendment standard of reasonableness. . . . Accordingly, the procedural due process claim is dismissed."). In warrantless arrests by a citizen, followed by police taking the arrestee into custody, such as here, the only procedure due under the Fourth Amendment, and hence, under the Fourteenth Amendment, is a post-deprivation hearing before a judicial officer determining that probable cause for the arrest existed. Gernstein; Taylor v. Waters, 81 F.3d 429, 436 (4th Cir. 1996) ("determination of probable cause by detached judicial officer that complies with Fourth Amendment constitutes all of the process due in order to constitutionally detain an accused pending trial"); Burnett v. Pearl River Basin Narcotics Task Force, No. 2:10cv267, 2011 WL 4344542, at *9 (S.D.Miss., Sept. 14, 2011) ("While any significant pre-trial restraint of liberty requires a reliable probable cause determination, . . . . all that is required is that those detained pursuant to a warrantless arrest receive a prompt determination of probable cause.") (*citing* Jones v. Lowndes County, Mississippi, No.1:09-cv-87, 2010 WL 4643242 (N.D.Miss. Nov. 9, 2010)). Cf. Baker v. McCollan, 443 U.S. 137, 143 (1979) ("We may even assume, arguendo, that, depending on what procedures the State affords defendants following arrest and prior to actual trial, mere detention pursuant to a valid warrant but in the face of repeated protests of innocence will after the lapse of a certain amount of time deprive the accused of 'liberty ... without due process of law'" and the Court went on to find that detention for three days does not amount to such a deprivation of a liberty interest without procedural due process). Plaintiff makes no allegation that he did not receive a prompt probable cause hearing or that he did not waive such a hearing.

and nothing that Plaintiff alleges in the Complaint or the objections merits a contrary conclusion. See, e.g., Wilson v. Agustino, No. 3:12-cv-1554 (D. Conn. Jan. 28, 2013) ("physician in emergency room at hospital who performed medical treatment on arrestee not considered to be state actor under any of the tests for state action") (*citing* Vazquez v. Marciano, 169 F.Supp.2d 248, 253–54 (S.D.N.Y.2001)); Dixon v. Baptist South Medical Hosp., No. 2:07-CV-662, 2010 WL 431186, at *7 (M.D.Ala., Feb. 1, 2010) ("The vast majority of federal courts agree that treatment by a non-contract private physician, nurse or hospital upon referral or on an emergency basis does not satisfy the requirements for state action.").

Plaintiff's conclusion that he was being "detained by hospital personnel for the specific purpose of turning him over to law enforcement authorities" is not dispositive given that Plaintiff was already "detained" by the police and the Washington Memorial Hospital was not holding him for the specific purpose of turning him over to law enforcement authorities; rather, it was evaluating and treating him after the roll-over crash.

### C. Mere Receipt of Government Funds Does Not Cause Recipients To Act Under Color of Law

Plaintiff attempts to save his Complaint by alleging that because the two hospital defendants allegedly receive federal monies, all the Defendants must act under color of state law. ECF No. 11 at 8. This is a non sequitur. The most that Plaintiff's argument could establish is that the two defendant hospitals allegedly receive federal monies – not state monies. In any event, mere receipt of government funding, whether federal or state, does not transform the actions taken by the recipient into actions taken under color of state or federal law. Schneller ex rel. Schneller v. Crozer Chester Medical Center, 387 F. App'x. 289, 293 (3d Cir. 2010) ("In his brief on appeal, Schneller concedes that 'there are no state actors of any clearly defined sort in this action,' but continues to press his argument that the private hospital appellees are state actors

7

because they receive public monies and tax benefits, they are subject to state and federal regulation, and their actions are 'so entwined with governmental policies ... as to become state action within the Civil Rights Act.' . . . . This argument has been considered and repeatedly rejected by the Supreme Court in similar cases."). Accordingly, Plaintiff's assertion regarding the receipt of government funds by the two hospital defendants does not cause the Defendants' acts to constitute acts under color of law.

**II. Plaintiff's Complaint Alleges Only Negligence.**

In the report, the magistrate judge recommended dismissal of the § 1983 claims on an alternative basis as well. Even if Plaintiff could meet the under color of state law requirement, the magistrate judge concluded the most that he alleged regarding his alleged lack of medical care was gross negligence on the part of the Defendants and negligent conduct is insufficient to state a claim under the Constitution. ECF No. 10 at 9 to 10. Plaintiff's objections are confusing in his attack on this aspect of the Report. Plaintiff claims that what he describes in his Complaint is not "mere negligence or gross negligence as alleged in Magistrate Judge Maureen P. Kelly's report and recommendation. The report and recommendation at issue tends to set forth allegations wholly outside of the plaintiff's complaint. . . ." ECF No. 11 at 5-6. Plaintiff's contention that the Report "sets forth allegations wholly outside of the plaintiff's complaint," id., is not accurate. The Report quotes liberally from the Complaint wherein Plaintiff asserts that Defendants' acts were "extremely negligent" or a "gross deviation from the required standard of care" or engaged in "malpractice." ECF No. 10 at 9. The Report accurately notes that the Complaint and its attachments, even read in the light most favorable to Plaintiff, fail to allege or establish anything more than negligence and Plaintiff points to nothing in the Complaint or its

attachments and does not make any additional allegations in the objections that would merit a contrary finding.[3]

## III. Plaintiff's Claims Under the ADA, Rehabilitation Act and EMTALA.

The Report contains the recommendation that Plaintiff's Complaint failed to state a claim under the ADA and the Rehabilitation Act because the Complaint merely alleged denial of treatment to Plaintiff, an individual with a disability. It was correctly noted in the Report that such denial of treatment claims under the ADA and Rehabilitation Act simply do not state a claim upon which relief can be granted. ECF No. 10 at 11 to 13 (citing Bryant v. Madigan, 84 F.3d 246, 248 (7th Cir. 1996) (ADA); Iseley v. Beard, 200 F. App'x 137, 142 (3d Cir. 2006)

---

[3] At the time of Plaintiff's arrival at Mon Valley Hospital, he was a convicted individual serving a term of probation. See ECF No. 1-1 at 16, ¶ 70 (officer arrested him on probation violation warrant at the Mon Valley Hospital); ECF No. 1-2 at 13 (Plaintiff was being transported to the Jail "because of a Washington County Adult Probation detainer"). With respect to the charges arising out of Plaintiff's attack on the two Nurse Defendants, Plaintiff would be considered at most an arrestee or a pretrial detainee. Different standards derived from different amendments to the Constitution apply to convicted or sentenced individuals (*i.e.*, the Eighth Amendment standards) and those who are arrested but not yet convicted or sentenced (*i.e.,* the Fourteenth Amendment standards). The Court of Appeals for the Third Circuit has noted the confused state of the law on these varying standards. See, e.g., Hubbard v. Taylor, 399 F.3d 150, 166 (3d Cir. 2005). The Court of Appeals has stated, albeit in an unpublished opinion, that

> [a] claim by a pretrial detainee challenging the conditions of confinement in a state detention facility is analyzed under the Due Process Clause of the Fourteenth Amendment. *See Hubbard v. Taylor*, 399 F.3d 150, 157-58 (3d Cir. 2005). Where the challenge concerns medical care received at the facility, the applicable standard is the one set forth in *Estelle v. Gamble*, 429 U.S. 97 (1976). *See Natale v. Camden County Corr. Facility*, 318 F.3d 575, 582 (3d Cir. 2003). Under this standard, "plaintiffs must demonstrate (1) that the defendants were deliberately indifferent to their medical needs and (2) that those needs were serious." Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999) (*citing Estelle*, 429 U.S. at 106).

Watkins v. Cape May Cnty. Corr. Ctr. (Med. Dept.), 240 F. App'x 985, 986 (3d Cir. 2007). Whatever the proper standard applicable to Plaintiff who was both a convicted person serving probation and, as regards the attacks on the two Nurse Defendants, an arrestee or a pretrial detainee, negligence or even gross negligence is simply beneath the constitutional threshold irrespective of Plaintiff's status or which amendment's standard applies. Daniels v. Williams, 474 U.S. 327, 333 (1986) ("injuries inflicted by governmental negligence are not addressed by the United States Constitution"); Woodward v. City of Worland, 977 F.2d 1392, 1399 n.11 (10th Cir. 1992)("Neither simple nor gross negligence implies an intentional and deliberate violation of constitutional rights, and consequently neither form of negligence satisfies the scienter requirement of § 1983."); Kwasnik v. LeBlon, 228 F. App'x 238, 244 (3d Cir. 2007) ("Liberally construing the Amended Complaint, as we must, we conclude that the allegations, and reasonable inferences drawn therefrom, at best, merely state a negligence claim. Negligence claims are not cognizable under § 1983.").

(ADA); Fitzgerald v. Corr. Corp. of Am., 403 F.3d 1134, 1144 (10th Cir. 2005) (Rehabilitation Act)).

In his objections, Plaintiff attempts to distinguish only one of the decisions cited in the Report, namely Bryant v. Madigan, 84 F.3d 246, 248 (7th Cir. 1996). Plaintiff claims that in Bryant, the plaintiff only complained that he was not given special accommodation whereas Plaintiff here is alleging discrimination. ECF No. 1-1 at 9. Plaintiff, however, is simply wrong concerning the allegations made by the plaintiff in Bryant. The plaintiff in Bryant did allege denial of medical care which he contended constituted a violation of the ADA. See Bryant, 84 F.3d at 247- 48 (the court stated in Bryant that the plaintiff therein "also complains that after the operation to fix his leg he was denied pain medication. He claims that the defendants' conduct violated both the Eighth Amendment and the Americans With Disabilities Act"). The contention was rejected by the court in Bryant. Plaintiff, like the plaintiff Bryant, alleged denial of medical treatment. Plaintiff specifically alleged the denial of being involuntarily committed for psychiatric treatment as being the failure by the Defendants which violated the ADA and the Rehabilitation Act. ECF No. 1-1 at 28, ¶¶ 103-04; id. at 29, ¶¶ 106-07. Where the so-called "discrimination" was nothing other than the alleged denial of medical treatment in the form of an involuntary commitment, there is no meaningful distinction between Bryant v. Madigan, or Isely and this case. Moore v. Prison Health Servs., Inc., 201 F.3d 448 (Table), 1999 WL 1079848, at *1 (10th Cir. 1999) ("These statutes [i.e., the ADA and the Rehabilitation Act] afford disabled persons legal rights regarding access to programs and activities enjoyed by all, not a general federal cause of action for challenging the medical treatment of their underlying disabilities."); Nails v. Laplante, 596 F.Supp 2d 475, at 481- 82 (D.Conn. 2009) (dismissing inmate's ADA claim, which focused on inadequate medical care, because the complaint "d[id] not include any non-conclusory allegations of discriminatory animus or ill will based on his disability and identifie[d] no program he

10

could not participate in or any service that was denied as a result of his disability"); Carrion v. Wilkerson, 309 F. Supp2d 1007, 1016 (N.D.Oh. 2004) (Plaintiff "failed to allege that the defendants denied him the benefits of any services, programs, or activities provided for other non-disabled inmates, or that [the defendants] subjected him to discrimination because of his diabetes. Instead, he claims he was denied a diabetic diet ... [but this] is not the type of claim that the ADA ... [was] intended to cover.") (internal quotation marks and brackets omitted)).

Plaintiff seeks to add a claim under the Emergency Medical Treatment and Active Labor Act ("EMTALA"), 42 U.S.C.A. § 1395dd, *et seq*. Plaintiff's putative claims under the EMTALA, however, suffer the same deficiencies as his claims under the ADA and Rehabilitation Act. The EMTALA does not provide a cause of action for medical malpractice (which is what, at most, Plaintiff alleges in his Complaint and objections). As the United States Court of Appeals for the First Circuit aptly noted in Reynolds v. Maine General Health, 218 F.3d 78, 83 (1st Cir. 2000):

> As numerous courts have noted, including this one, "EMTALA is a limited 'anti-dumping' statute, not a federal malpractice statute." *Bryan v. Rectors and Visitors of the Univ. of Va.,* 95 F.3d 349, 351 (4th Cir.1996) (citation omitted); *see Correa, supra,* 69 F.3d at 1192; *Summers v. Baptist Med. Ctr. Arkadelphia*, 91 F.3d 1132, 1137 (8th Cir. 1996) ("So far as we can tell, every court that has considered EMTALA has disclaimed any notion that it creates a general federal cause of action for medical malpractice in emergency rooms."); *Urban v. King*, 43 F.3d 523, 525 (10th Cir. 1994). Congress enacted EMTALA in 1996, in the face of "the increasing number of reports that hospital emergency rooms are refusing to accept or treat patients with emergency conditions if the patient does not have medical insurance." H.R.Rep. No. 241(I), 99th Cong., 1st Sess. 27 (1986), reprinted in 1986 U.S.C.C.A.N. 42, 605. EMTALA created a remedy for patients in certain contexts in which a claim under state medical malpractice law was not available. Although the exact scope of the rights guaranteed to patients by EMTALA is still not fully defined, it is clear that at a minimum Congress manifested an intent that all patients be treated fairly when they arrive in the emergency department of a participating hospital and that all patients who need some treatment will get a first response at minimum and will not simply be turned away. *See Baber v. Hospital Corp. of America*, 977 F.2d 872, 880 (4th Cir. 1992) ("The avowed purpose of EMTALA was not to guarantee that all patients are properly diagnosed, or even to ensure that they receive adequate care, but instead to provide an 'adequate first response to a medical crisis' for all patients and 'send a clear signal to the hospital community ... that all Americans, regardless of wealth or status, should know that a hospital will provide what services it can when they are truly in physical distress.'") (*quoting* 131 Cong. Rec. S13904 (Oct. 23, 1985) (statement of Sen. Durenberger)). Appellants' argument that because Mr. Reynolds

> was in a hospital room receiving treatment for his injuries when the risk of DVT became manifest, it would be unreasonable to deny him the protections of subsection (a) is unpersuasive. The fact that Mr. Reynolds was in the hospital receiving treatment is a *prima facie* showing that the purpose of subsection (a) was satisfied; any failures of diagnosis or treatment were then remediable under state medical malpractice law.

What the court in Reynolds stated applies equally here. As correctly noted by Plaintiff, only the two hospital defendants can be held liable under the EMTALA. ECF No. 11 at 10. Given that Plaintiff was admitted to the emergency rooms of both hospitals for treatment, and not turned away, a prima facie case under the EMTALA cannot be plausibly shown. Plaintiff alleges nothing and, apparently, could allege nothing to undo this lack of a prima facie case under the EMTALA. Accordingly, this late raised claim under the EMTALA does not save Plaintiff's Complaint from being dismissed for failure to state a claim upon which relief can be granted.

**IV. The Court Declines To Exercise Supplemental Jurisdiction Over State Law Claims.**

With respect to Plaintiff's state law claims, given that this court adopts the Report's recommendation to dismiss all the federal law claims, there is no affirmative reason to adjudicate Plaintiff's state law claims and they are dismissed without prejudice.

No other objection merits discussion or rejection of the Report.

After *de novo* review of the pleadings and the documents in the case, together with the Report and Recommendation, the following order is entered:

AND NOW, this 17th day of May, 2013,

IT IS HEREBY ORDERED that all the federal law claims in the Complaint are dismissed for failure to state a claim upon which relief can be granted pursuant to the screening provisions of the Prison Litigation Reform Act. The court declines to exercise supplemental jurisdiction over the state law claims. Any further attempt to amend the Complaint would be futile.

IT IS FURTHER ORDERED that the Report and Recommendation, ECF No. 10, filed on March 6, 2013, by Magistrate Judge Kelly, is adopted as the opinion of the court, as supplemented by this Memorandum Opinion and Order.

The Clerk is to mark the case closed.

Lastly, the court certifies, pursuant to 28 U.S.C. § 1915(a), that any appeal from this order would not be taken in good faith for reasons that are obvious from this Memorandum Opinion and Order and the Report and Recommendation.

/s/*Joy Flowers Conti*
JOY FLOWERS CONTI
UNITED STATES DISTRICT JUDGE

Dated: May 17, 2013

cc: The Honorable Maureen P. Kelly
United States Magistrate Judge

Shaun Rosario
Washington County Correctional Facility
100 West Cherry Avenue
Washington, PA 15301